UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY ELIZABETH B.,[1]

      **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

Civil Action 3:25-cv-170
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, Mary Elizabeth B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 6). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I.    BACKGROUND

Plaintiff protectively filed her DIB application in 2022, alleging disability beginning August 15, 2019. (R. at 187–95.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on February 6, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id.* at 35–56.)

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

A vocational expert ("VE") also appeared and testified. (*Id*.) On May 21, 2024, the ALJ issued an unfavorable determination, which became final on May 1, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 14–34, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred because he limited her to the frequent use of her upper right extremity instead of the occasional use of her right upper extremity. (Pl.'s Statement of Errors 3–5, ECF No. 12.) This contention of error lacks merit.

## II.    THE ALJ'S DECISION

The ALJ issued the unfavorable determination on May 21, 2024. (R. at 14–34.) The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2024. (*Id*. at 19.) At step one of the sequential evaluation process,[2] the

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 15, 2019. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disc disease (DDD) of the cervical and lumbar spine; obesity; diabetes mellitus (DM); migraine headaches; and degenerative joint disease (DJD) of the right shoulder. (*Id*.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 21.)

> The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] as follows:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequent use of the right upper extremity for pushing, pulling, and reaching in all directions including overhead.

(*Id*. at 22.) At step four, relying on the VE's testimony, the ALJ determined that Plaintiff could not perform her past relevant work. (*Id*. at 28.) Relying again on the VE's testimony at step five, the ALJ determined that considering her age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy including the representative jobs of housekeeping cleaner, inspector, and packager. (*Id*. at 28–29.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant period. (*Id*. at 29.)

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible error by limiting her to the frequent (instead of occasional) use of her right upper extremity for pushing, pulling, and reaching in all directions. (Pl.'s Statement of Errors 3–5, ECF No. 12.) Plaintiff's contention lacks merit.

Defendant correctly contends that substantial evidence supports the ALJ's frequent use limit. (Def.'s Mem. in Opp'n 4–5, ECF No. 15.) As Defendant notes, both state agency reviewing physicians found that Plaintiff was limited to frequent pushing, pulling, and reaching with the right upper extremity. (R. at 60, 69.)

The ALJ determined this finding was persuasive, and discussed it, in relevant part, as follows:

> The Department of Disability Determination reviewing physicians assessed the claimant's residual functional capacity based upon a review of the evidence of record . . . . It was determined that the claimant could . . . frequently push/pull with the right upper extremity . . . . frequently reach in all directions including overhead with the right upper extremity . . . . The undersigned finds the opinions of these reviewers to be persuasive. These reviewers supported their findings with explanation and citations to the record . . . . Nonetheless, the other limitations found by these reviewers are supported by the evidence of record. For example, although the claimant has a long history of right upper extremity impairment, as discussed above she is noted to receive adequate relief and management of her symptoms with conservative treatment modalities. Recall, October of 2019, the claimant reported improved 75% reduction of her right trapezius muscle pain and significantly improved range of motion after receiving her second set of injections (Exhibit 4F at 20). Since October of 2019, the claimant's treatment has been minimal and insignificant. The claimant's next treatment note regarding her right upper extremity was not until September of 2022, at which time the claimant demonstrated tenderness anteriorly along the subacromial border, moderate tenderness over the AC joint, substantial weakness with drop arm testing, pain, and limitation with internal and external rotation, positive Neer's and Hawkin's testing upon examination of the right shoulder (Exhibits 4F at 22; 9F at 7). There is no additional treatment for the right upper extremity again until January of 2023, at which time the claimant reported fairly constant right shoulder pain that increases with activity, inability to use the right arm for overhead or forceful manner. Recall, her physical examination during this visit was remarkable for positive drop arm maneuver, decreased strength with external rotation (3/5), tenderness over the

> anterior and lateral aspect of the right shoulder, and multiple trigger points to the right trapezial muscle with spasticity (Exhibit 9F at 9). Subsequent to this visit, the claimant was given a prescription for lidocaine patches and handicap disability placard (Exhibit 9F at 9). The frequency of treatment indicated in the record would not support the severity of limitation opined by the claimant . . . .

(*Id*. at 26.) As this discussion demonstrates, the ALJ determined that the reviewers' frequent-use limit was persuasive because Plaintiff achieved relief with conservative treatments and seldom sought treatment for her right shoulder during the relevant period. (*Id*.)

Substantial evidence supports that determination. As the ALJ explained, Plaintiff sought treatment for right shoulder pain in Fall 2019. (*Id*. at 26, 668–69, 671, 672.) After receiving trigger-point injections, Plaintiff reported significant improvement and demonstrated improved range of motion in her right shoulder. (*Id*.) Plaintiff then apparently sought no additional treatment again for her shoulder pain until September 2022—approximately three years later. (*Id*. at 26, 673–74.) Imaging at that time showed only mild glenohumeral joint changes and a calcific lesion inferior to the mid clavicle. (*Id*. at 674.) Plaintiff also received a corticosteroid injection. (*Id*.) But, as the ALJ indicated, Plaintiff apparently did not seek treatment again for her shoulder pain after that until January 2023. (*Id*. at 26, 1124.)

In short, the reviewers found that Plaintiff was limited to the frequent use of her upper right extremity, and the ALJ found that limit persuasive. The reviewers' frequent-use finding constituted substantial evidence to support the ALJ's frequent-use limit. And notably, Plaintiff does not challenge the ALJ's evaluation of the reviewers' findings.

Instead, Plaintiff points to other evidence and contends that it supports a limit to only occasional use of her upper right extremity. (Pl.'s Statement of Errors 3–4, ECF No. 12.) That evidence includes Plaintiff's testimony about her shoulder pain. (*Id*.) But where substantial evidence supports an ALJ's determination it will be upheld, even if substantial evidence could

also support a different conclusion. *See Emard*, 953 F.3d at 849. Moreover, Plaintiff does not challenge the ALJ's assessment of her subjective symptoms.

Plaintiff also appears to challenge the ALJ's reliance on the VE's testimony at step five. (Pl.'s Statement of Errors 4–5, ECF No. 12.) Plaintiff points out that the VE testified that the inclusion of an occasional-use limit in her RFC instead of a frequent-use limit would have been work preclusive. (*Id*. (citing R. at 55).) But the Sixth Circuit Court of Appeals has held that an ALJ's hypothetical question to a VE need only include those limits that the ALJ finds credible. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001); *Casey v. Sec'y of Health and Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993). Because the ALJ determined that the reviewers' frequent-use limit was persuasive, he properly included it in the hypothetical question he posed to the VE. (R. at 54–55.) The ALJ then appropriately relied on the VE's response to that hypothetical. (*Id*. at 29.) The VE's testimony about the impact of other limits that the ALJ did not deem credible, including an occasional-use limit, was not material to the ALJ's step five determination.

## V.    CONCLUSION

Accordingly, for all reasons contained herein, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's Decision.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE